## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SAMUELLA FERRARI,
an individual,

                                 Case No.:

      Plaintiff,

v.

NEWREZ LLC,
d/b/a SHELLPOINT MORTGAGE
SERVICING,
a foreign limited liability company,
MCCALLA RAYMER LEIBERT PIERCE, LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, SAMUELLA FERRARI (hereinafter, "Plaintiff"),

by and through the undersigned counsel, and hereby files this Complaint against

Defendants, NEWREZ LLC, d/b/a SHELLPOINT MORTGAGE SERVICING

(hereinafter, "Shellpoint"), EXPERIAN INFORMATION SOLUTIONS, INC.

(hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union")

(hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1

1.      This is an action brought by an individual consumer for damages for Shellpoint's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Shellpoint improperly attempted to credit-report and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian and TransUnion that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff repeatedly advising Shellpoint that she did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed Shellpoint's reporting of such erroneous information directly to Experian and TransUnion— Shellpoint *continued* continued to report this fraudulent account with a significant balance due and past-due.

2.      Furthermore, this is an action for damages for Experian's and TransUnion's violations of the FCRA wherein Experian and Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the alleged Shellpoint account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Experian and Trans Union including sworn statements.

3.      Additionally, this is an action for damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 *et seq.* (hereinafter "FDCPA") wherein McCalla Raymer Leibert Pierce, LLC filed a lawsuit against the Plaintiff in

an attempt to collect a debt that did not exist.

## JURISDICTION, VENUE & PARTIES

4.    Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq., and pursuant to the FDCPA, 15 United Stats Code Section 1692 et seq.

5.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.    Venue is proper in this District as the acts and transactions described herein occur in this District.

7.    At all material times herein, Plaintiff is a natural person residing in Polk County, Florida.

8.    At all material times herein, Shellpoint is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 1100 Virginia Drive, Suite 125, Fort Washington, Pennsylvania 19034.

9.    At all material times herein, McCalla Raymer Leibert Pierce, LLC is a foreign limited liability company with its principal place of business located at 1320 Greenway Dr, Ste 780, Irving, TX 75038, that, itself and through its subsidiaries, regularly collects debts from consumers in Polk County, Florida.

10.    At all material times herein, McCalla Raymer Leibert Pierce, LLC uses instrumentalities of interstate commerce or the mail in a business the principal purpose of which is the collection of debts.

11.    At all material times herein, McCalla Raymer Leibert Pierce, LLC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

13.    At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

14.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

15.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

16.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—

4

and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

17.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

18.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

19.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

20.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

21.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

### FDCPA STATUTORY STRUCTURE

22.    The FDCPA is a federal statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C. §§ 1692(a) and (e).

23.    The FDCPA imposes civil liability on any debt collector who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and prohibits engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6).

24.    Specifically,    the    FDCPA    prohibits    unlawful    debt    collection

"communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2) (emphasis added).

## GENERAL ALLEGATIONS

25.    At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FDCPA, Section 1692(a) because she is an individual and allegedly obligated to pay a debt.

26.    At all material times herein, Shellpoint, itself and through its subsidiaries, regularly extends HELOCs—and credit reports debts associated with the same— allegedly owed by consumers residing in Polk County, Florida.

27.    At all material times herein, Shellpoint attempts to collect and reports information concerning an alleged consumer credit card account that was opened as a result of identity theft and fraud, referenced by account number beginning 101892- (hereinafter, the "Alleged Debt" or the "Account").

28.    At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in her name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any goods or services as a result of any transactions made creating the Alleged Debt.

29.    At all material times herein, Shellpoint, in the ordinary course of business, regularly extended open-end consumer credit, pursuant to a HELOC, on which Shellpoint assessed finance charges.

30.    At all material times herein, Shellpoint is a "person" who furnishes

7

information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

31.    At all material times herein, Defendants' conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by the FDCPA.

32.    At all material times herein, Shellpoint furnishes information to Experian and Trans Union regarding the Account and the corresponding Alleged Debt referenced by account number beginning in 101892- (hereinafter, the "Account").

33.    At all material times herein, Shellpoint furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

34.    At all material times herein, McCalla Raymer Leibert Pierce, LLC's conduct, with regard to the Alleged Debt complained of below, qualifies as a "communication" as defined by the FDCPA.

35.    At all material times herein, Experian and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

36.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

37.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

38.     During or about February 2007, a Bank of America HELOC account was allegedly opened in Plaintiff's name (the "Account").

39.     To the extent the Account was opened by an individual or entity, such individual or entity opened the Account without Plaintiff's consent, knowledge, or approval.

40.     To the extent that the HELOC account was opened, resulting in a an alleged balance due (i.e., the Alleged Debt), Plaintiff did not apply for the HELOC herself, Plaintiff did not authorize any other individual or entity to apply for the HELOC for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of the opening of the HELOC account.

41.     Subsequently, during or about 2019, the HELOC was assigned to Shellpoint.

42.     During or about November 2023, Shellpoint filed a collections suit in the County Court of The Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, County Civil Division, Case No. 50-2023-CA-016035-XXXA-MB, through its counsel McCalla Raymer Leibert Pierce, LLC against Plaintiff seeking payment on

a debt in excess of $30,000.00 (hereinafter, "Collections Suit").

43. On or about March 29, 2024, Plaintiff's defense attorney for the Collections Suit filed a *Motion To Dismiss* in the Collections Suit.

44. Within the *Motion To Dismiss*, Plaintiff's defense attorney argued that Plaintiff did not execute this mortgage and that Plaintiff's signature was forged.

45. On or about September 30, 2024, a *Notice of Dropping Party Defendant* was filed and Shellpoint referenced that they dismissed Plaintiff from the lawsuit per the allegations contained within Plaintiff's *Motion to Dismiss*.

46. As such, Plaintiff does not owe a balance to Shellpoint, as any balance incurred by the opening of the HELOC Account was created due to identity theft and fraud.

47. Prior to filing the Collections Suit, McCalla Raymer Leibert Pierce, LLC did not contact Plaintiff to determine the legitimacy of the Account.

48. Prior to filing the Collections Suit, McCalla Raymer Leibert Pierce, LLC only reviewed the billing statements sent by Shellpoint to an address not belonging to Plaintiff for the purpose of determining the monetary amount to demand in the Collections Suit.

49. McCalla Raymer Leibert Pierce, LLC's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under federal law.

50. Given McCalla Raymer Leibert Pierce, LLC's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff in

violation of said debt collection laws, Plaintiff has no adequate remedy at law.

51.     Plaintiff needs and is entitled to injunctive relief with respect to McCalla Raymer Leibert Pierce, LLC's debt collection communications in violation of the FDCPA.

52.     McCalla Raymer Leibert Pierce, LLC's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing the Alleged Debt personally, Plaintiff had no choice but to pay the Alleged Debt or continue to endure McCalla Raymer Leibert Pierce, LLC's unlawful debt collection practices.

## DEFENDANTS' CREDIT REPORTING OF THE ACCOUNT AND PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA

53.     During or around September 2024, Plaintiff obtained copies of her consumer disclosure reports from Experian and Trans Union.

54.     Despite never personally opening the Account nor authorizing anyone to open the Account on her behalf, Shellpoint and Experian reported the Shellpoint HELOC account (i.e., the Account) as owed by Plaintiff personally with a balance due in the amount of $47,520.00 and a $26,502.00 balance past-due as of May 2024.

55.     Similarly, despite never personally opening the Account nor authorizing anyone to open the Account on her behalf, Shellpoint and Trans Union reported the Account as owed by Plaintiff personally with a balance due in the amount of $47,920.00 and a $20,456.00 balance past-due as of July 2024.

56.     Defendants' reporting of the Account with a balance due or past-due in

excess of $0.00 as of September 2024 is inaccurate because any alleged balance owed was the result of identity theft and fraud.

57.    Additionally, Shellpoint, Experian, and Trans Union reported the Account with a date of last payment of April 5, 2019, and with a date opened of February 2, 2007.

58.    To be clear, Plaintiff never opened the Account and did not make any payments on the Account.

59.    Defendants' reporting of historical or current late payment information is similarly inaccurate because any alleged balance owed was the result of identity theft and fraud, and therefore, Plaintiff could not be late or past-due on a balance she does not owe.

60.    On or about October 14, 2024, Plaintiff sent a letter, with the assistance of her attorneys, to Experian and Trans Union, respectively, disputing Defendants' ongoing reporting of the Account with a balance owed and as belonging to Plaintiff (hereinafter, "First Dispute").

61.    More specifically, Plaintiff's First Dispute advised Experian and Trans Union that the Account did not belong to Plaintiff and requested that Defendants delete the Account from her credit reports and credit files.

62.    Experian received Plaintiff's First Dispute.

63.    Experian communicated Plaintiff's First Dispute to Shellpoint.

64.    Shellpoint received notice of Plaintiff's First Dispute via Experian.

65.    In response to Plaintiff's First Dispute, Experian purportedly verified the

Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Experian with a balance due of $47,520.00 and past due in excess of $26,000.00.

66. Trans Union received Plaintiff's First Dispute.

67. Trans Union communicated Plaintiff's First Dispute to Shellpoint.

68. Shellpoint received notice of Plaintiff's First Dispute via Trans Union.

69. In response to Plaintiff's First Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due of $47,920.00 and past due in excess of $20,000.00.

70. On or about November 14, 2024, Plaintiff sent a second letter, with the assistance of her attorneys, to Experian and Trans Union respectively, *again* disputing Defendants' reporting of the Account hereinafter, "Second Dispute").

71. Specifically, Plaintiff's Second Dispute advised Experian and Trans Union that the Account balance was a result of identity theft and fraud, directed Defendants to the identity theft report Plaintiff filed, and requested that Defendants delete the Account from Plaintiff's credit reports and credit files.

72. Plaintiff enclosed copies of Plaintiff's FTC Identity Theft Report in support of her Second Dispute.

73. Experian received Plaintiff's Second Dispute.

74. Experian communicated Plaintiff's Second Dispute to Shellpoint.

75. Shellpoint received notice of Plaintiff's Second Dispute via Experian.

76.    In response to Plaintiff's Second Dispute, Experian deleted its reporting of the Account.

77.    Trans Union received Plaintiff's Second Dispute.

78.    Trans Union communicated Plaintiff's Second Dispute to Shellpoint.

79.    Shellpoint received notice of Plaintiff's Second Dispute via Trans Union.

80.    In response to Plaintiff's Second Dispute, Trans Union purportedly verified the Account and continued to report the Account on Plaintiff's credit report and credit file as maintained by Trans Union with a balance due in excess of $47,000.00 and past due in excess of $20,000.00.

81.    As of the date of this Complaint, Trans Union and Shellpoint continue to report the Account on Plaintiff's credit reports and in Plaintiff's credit files as a negative, derogatory, and adverse account with a significant—and inaccurate—balance past-due.

## DAMAGES

82.    As a result of Defendants' reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Shellpoint if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

83.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to

obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

84.     Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct.

85.     Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not initiate or authorize the cash advance including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account and Shellpoint's ongoing attempts to collect the Alleged Debt.

86.     Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC d/b/a Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**
**(As to Shellpoint Only)**

Plaintiff re-alleges paragraphs one (1) through eighty-six (86) as if fully restated herein and further states as follows:

87.     Shellpoint is subject to, and violated the provisions of, 15 United States

Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian and Trans Union delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

88.    As described above,  Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff does not have any active or closed HELOC accounts with Shellpoint; (ii) Plaintiff did not personally apply for the Account or open the Account; (iii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iv) Plaintiff possessed no knowledge of the Account that was alleged opened in 2007 until Shellpoint brought a collections suit against her in 2023; (v) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (vii) Plaintiff completed an FTC Identity Theft Report.

89.    Despite Plaintiff not being responsible for the Alleged Debt, and despite Shellpoint receiving notice of Plaintiff's disputes from Plaintiff, Experian and Trans Union—including the information and documents referenced in the above paragraph— Shellpoint willfully and/or negligently failed to request that Experian and Trans Union delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian and Trans Union including significant balances due and past-due.

90.     Between October 2024 and November 2024, Plaintiff repeatedly disputed Shellpoint's reporting of the Account to Experian and Trans Union, and the credit reporting agencies forwarded Plaintiff's disputes to Shellpoint.

91.     In total, Shellpoint received *at least* four (4) disputes from Experian and Trans Union regarding its reporting of the Account.

92.     The documents Plaintiff enclosed in support of her disputes included an FTC Identity Theft Report, Plaintiff's *Motion to Dismiss*, and Shellpoint's *Notice of Dropping Party Defendant* proving that Plaintiff did not owe the Alleged Debt forming the basis of the Account.

93.     In response to Plaintiff's disputes, despite Shellpoint receiving notice of Plaintiff's disputes from Experian and Trans Union—including the information and documents referenced in the above paragraph— Shellpoint failed to request that Experian and Trans Union delete the Account from Plaintiff's credit reports and credit files.

94.     Instead, Shellpoint purportedly verified and/or updated its reporting of the Account including significant balances due and past-due.

95.     Shellpoint's refusal to request that Experian and Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Shellpoint clearly possessed knowledge that the Alleged Debt was a result of identity theft and fraud.

96.     Shellpoint's re-investigations were not conducted in good faith.

97.     Shellpoint's re-investigations were not conducted reasonably.

98.    Shellpoint's re-investigations were not conducted using all information and documents reasonably available to Shellpoint.

99.    As a result of Shellpoint's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

100.    Shellpoint's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

101.    Shellpoint's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>**
**(As to Experian and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through eighty-six (86) as if fully restated

herein and further states as follows:

102.   Experian and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

103.   Experian and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Account.

104.   Specifically, despite Plaintiff *repeatedly* advising Experian and Trans Union that Plaintiff did not open the Account, did not authorize any other person to open the Account in her name or on her behalf, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the Account was opened as a result of identity theft and fraud— Experian and Trans Union each continued to report the Account with a balance due and past-due, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

105.   Further, Experian and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Experian and Trans Union credit reports and credit files.

106.   For example, despite Plaintiff's repeated disputes including the identity

theft report information and Collections Suit documents proving she did not owe the Alleged Debt forming the basis for the Account, neither Experian nor Trans Union deleted the Account from Plaintiff's credit reports and credit files in response to Plaintiff's First Dispute, Trans Union failed to delete the Account from Plaintiff's credit reports and credit files in response to Plaintiff's Second Dispute, and neither Experian nor Trans Union requested documents from Shellpoint in support of Shellpoint's reporting of the Account.

107.    Despite Plaintiff notifying Experian and Trans Union of their reporting errors and providing documents in support of her disputes, Experian and Trans Union each continued to report the Account with a balance due and past-due, and each subsequently published Plaintiff's credit reports to Plaintiff current creditors and/or potential future creditors including the inaccurately reported Account.

108.    As a result of Experian and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

109.    Experian and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff

as stated herein.

110.    Experian and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.*</u>**
**(As to Experian and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through eighty-six (86) as if fully restated herein and further states as follows:

111.    Experian and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

112.    Specifically, Experian and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's

disputes, as described herein.

113.    Overall, Plaintiff's First Dispute and Second Dispute provided Experian and Trans Union with sufficient information and supporting documentation allowing Experian and Trans Union to identify that the alleged balance owed on the Account was created as a result of identity theft and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

114.    For example, despite Plaintiff's repeated disputes including the identity theft report information and Collections Suit documents proving she did not owe the Alleged Debt forming the basis for the Account, neither Experian nor Trans Union deleted the Account from Plaintiff's credit reports and credit files in response to Plaintiff's First Dispute, Trans Union failed to delete the Account from Plaintiff's credit reports and credit files in response to Plaintiff's Second Dispute, and neither Experian nor Trans Union requested documents from Shellpoint in support of Shellpoint's reporting of the Account.

115.    Following Plaintiff's First Dispute, Experian and Trans Union continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

116.    Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in her name, and did not benefit from the Account in any way, and given that Experian and Trans Union did not request any documents from Shellpoint supporting Shellpoint's reporting of the Account, Experian and Trans Union could not reasonably verify that Plaintiff is personally responsible

for the balance allegedly owed on the Account.

117. Trans Union continued to inaccurately report the Account with derogatory, late payment information, and with a significant balance past-due following Plaintiff's Second Dispute, causing the Account to be reported as a derogatory, negative, or adverse account.

118. As such, Experian and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

119. Such reporting is false and evidences Experian and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

120. Experian and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

121. Experian and Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by Shellpoint.

122. Experian and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

123. Experian and Trans Union's reinvestigation procedures are unreasonable.

124. Experian and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian and Trans Union.

125.    Experian and Trans Union's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

126.    Experian and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Experian and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

127.    As a result of Experian and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, were deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

128.    Experian and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

129.    Experian and Trans Union's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1692e and 1692f**
**(As to McCalla Raymer Leibert Pierce, LLC)**

Plaintiff re-alleges paragraphs one (1) through fifty-two (52) as if fully restated herein and further states as follows:

130.   McCalla Raymer Leibert Pierce, LLC is subject to, and violated the provisions of, United States Code, Sections 1692e and 1692f by using false, deceptive, and misleading representations in connection with attempting to collect the Alleged Debt, and by using unfair and unconscionable means to collect the Alleged Debt.

131.   More specifically, during 2023, McCalla Raymer Leibert Pierce, LLC knowingly filed the Collections Suit in an attempt to collect the Alleged Debt and obtain a judgment of at least $30,957.50 when Plaintiff in fact owed $0.00.

132.   Despite Plaintiff never opening the Account creating the Alleged Debt, never authorizing another person to create the Alleged Debt, and despite Plaintiff obtaining no benefit from the goods or services resulting from the Alleged Debt, Defendant nevertheless filed the Collections Suit in order to collect the Alleged Debt.

133.   During the course of its attempt to collect the Alleged Debt, McCalla Raymer Leibert Pierce, LLC knowingly and falsely asserted the Alleged Debt as legitimate and falsely asserted that McCalla Raymer Leibert Pierce, LLC possessed the right to collect the Alleged Debt from Plaintiff.

134.   Accordingly, McCalla Raymer Leibert Pierce, LLC violated 15 United States Code, Sections 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1).

135.   As a direct and proximate result of McCalla Raymer Leibert Pierce, LLC's actions, Plaintiff sustained damages as defined by United States Code, Section 1692k.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.   Judgment declaring that McCalla Raymer Leibert Pierce, LLC violated the FDCPA;

b.   Judgment enjoining McCalla Raymer Leibert Pierce, LLC from engaging in further conduct in violation of the FDCPA;

c.   Judgment against McCalla Raymer Leibert Pierce, LLC for maximum statutory damages under the FDCPA;

d.   Judgment against Shellpoint, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

e.   Actual damages in an amount to be determined at trial;

f.   Compensatory damages in an amount to be determined at trial;

g.   Punitive damages in an amount to be determined at trial;

h.   An award of attorney's fees and costs; and

i.   Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2025, I filed a true and correct copy of the above and foregoing *Complaint* via CM/ECF which shall serve a copy of the same to all counsel of record.

/s/ *Jon P. Dubbeld*
Attorney

27